670 P.2d 878

**UNION PACIFIC RAILROAD COMPANY, Plaintiff-Respondent, Cross-Appellant,**

v.

**The STATE TAX COMMISSION of the State of Idaho, Defendant-Appellant, Cross-Respondent.**

No. 14024.

Supreme Court of Idaho.

Oct. 3, 1983.

472

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Theodore V. Spangler, Deputy Atty. Gen., Boise, for defendant-appellant, cross-respondent.

D.A. Bybee, of Green, Service, Gasser & Kerl, Pocatello, F. Kent Kalb, Broomfield, Colo., for plaintiff-respondent, cross-appellant.

DONALDSON, Chief Justice.

This case concerns Union Pacific Railroad Company's (Union Pacific's) 1942 State Income Tax Return. Union Pacific filed the return in a timely manner and at that time no adjustments to the original return were made by the State or Union Pacific. However, federal proceedings and litigation on Union Pacific's 1942 federal income taxes were not concluded until 1977. On June 28, 1977, Union Pacific as required by I.C. § 63–3069, provided the State Tax Commission with notice of the final determination of federal taxes. Such a notice reopens for one year the statute of limitations both for assessment of additional state taxes and for claiming refunds of taxes. Within the one-year period Union Pacific filed a claim for refund of taxes allegedly resulting from the final federal determination. After reviewing the original return, the Tax Commission's audit staff disallowed the claimed refund and issued a Notice of Deficiency Determination asserting additional taxes due.

As permitted by law, Union Pacific sought administrative relief from the Commission by filing a petition for redetermination. Following an informal conference on the matter the Commission generally affirmed the taxes assessed and the deficiency notice subject to a small mathematical correction. Thereafter, Union Pacific filed an action in the district court seeking review of the Tax Commission's decision. The district court determined that (1) the State Tax Commission correctly assessed additional tax to Union Pacific for the year of 1942 and (2) Union Pacific should not be required to pay any interest on the tax assessed. The Commission filed its Notice of Appeal concerning the interest issue and Union Pacific cross-appealed from the court's determination that additional taxes were due.

Before deciding the issue raised on appeal by the Tax Commission of whether or not Union Pacific should be required to pay any interest on the tax assessed, it is necessary for this Court to first determine the cross-appeal concerning whether or not additional

taxes are due. The issue set forth by Union Pacific on its cross-appeal raises the question of whether Union Pacific's 1942 federal income tax is to be designated a deduction from apportioned income, allocated income, or both.

■ In 1942 Union Pacific was subject to the Property Relief Act of 1931. Under § 16 of the Act, a multi-state taxpayer has both apportioned income and allocated income. Apportioned income, as it is currently defined, is income that cannot be specifically attributed to any one state so a formula is used to apportion or divide that income among the various states in which the taxpayer conducts business. Allocated income is that which can be wholly attributed to a specific jurisdiction. According to § 29(3) of the Act, Union Pacific was able to treat the amount of its federal income tax as a deduction on its state income tax return. Union Pacific treated the federal income tax as a deduction solely against apportioned income and requested a $66,826.45 refund. The State Tax Commission instead split the federal income tax, applying a portion of it as a deduction from apportioned income and the other portion of it as a deduction from allocated income. This treatment resulted in an additional tax liability of $47,935 which the State Tax Commission assessed against Union Pacific for the year 1942. In addition, the Commission asserted it was entitled to the interest from 1942 in the amount of $105,495.

On cross-appeal, Union Pacific argues that the district court erred in holding that the federal income tax should be deducted from all income instead of only apportioned income. Union Pacific argues that even though deducting the federal income tax from both apportioned and allocated income may be the better practice and the practice that was followed after 1947, neither the statutes nor the regulations in effect in 1942 mandated such a result. The appellant, Tax Commission, claims that the statute and regulations in use in 1942 contain

nothing to indicate that the federal income tax expense deduction should be singled out for any special treatment. A reading of the statute and regulations indicates that if the deductible tax expense can be allocated specifically to a state, it is deductible from the income allocated to that state and not from apportioned income. On the other hand, if the expense is not required to be directly allocated, and the expense cannot be specifically attributed to any one state, it is an apportionable expense, deductible from apportioned income only. Union Pacific claims that it is more reasonable to read the regulations and statute as requiring the federal income tax expense to be deducted only from apportioned income because there is no formula or explanation that can be used to assign a portion, or to determine the appropriate portion, of the federal income tax expense to be deducted from allocated income.

The trial court in its memorandum decision and order found that

"reasonableness requires that the position taken by the Tax Commission be upheld. The federal income tax is an expense which is reasonably and unmistakenly related to the earning of income of whatever type and wherever earned. The federal tax obtains regardless of whether it is allocable or apportionable income that generates the tax. The position maintained by the plaintiff is fraught with much uncertainty and subject to too many vagaries depending upon the taxpayer's economic needs to be considered the reasonable intent of the legislature in composing a workable, uniform comprehensive income tax program."

The precise statutory language applicable to the handling of the federal income tax deduction in 1942 reads, in pertinent part, as provided in I.C.A. § 61–2429(3): [1]

"*61–2429. Corporations—Deductions allowed.*—In computing the net income of a corporation subject to the tax imposed

---

1. When this statute was adopted the terms "allocated" income and "apportioned" income had not yet acquired their current specific meanings. The statutes and regulations refer

to "allocated" income as income within and without Idaho and "apportioned" income as common income.

by section 61–2425 there shall be allowed as deductions:

" . . . .

"3. Taxes paid or accrued within the taxable year except (a) income taxes imposed by this chapter, (b) taxes assessed against local benefits of a kind tending to increase the value of the property assessed, (c) any taxes based upon the capital stock of a corporation or association imposed by the State of Idaho under any law now in force or hereafter enacted; provided, that no taxes incurred prior to January 1, 1931, and properly chargeable against business operations of prior years shall be allowed as deductions hereunder. The deduction allowed by this paragraph shall be allowed in the case of taxes imposed upon a shareholder of a corporation upon his interest as shareholder, which are paid by the corporation upon his interest as shareholder, which are paid by the corporation without reimbursement from the shareholder, but in such cases no deduction shall be allowed the shareholder for the amount of such taxes. For the purpose of this paragraph, estate, inheritance, legacy, and succession taxes accrue on the due date thereof except as otherwise provided by law of the jurisdiction imposing such taxes, and shall be allowed as a deduction only to the estate . . . . "

And I.C.A. § 61–2416 provided in pertinent part:

"*61–2416. Net income of non-resident individuals, and any corporation subject to tax under this chapter.*

"a. In the case of a non-resident individual to the extent that he has a business situs in the state of Idaho, or any corporation subject to tax under this chapter, the following items of gross income shall be treated as income from sources within the state of Idaho:

" . . . .

"b. From the items of gross income specified in subdivision a, there shall be deducted expenses, losses, and other deductions properly apportioned or allocated thereto and a ratable part of any expenses, losses or other deductions which

can not definitely be allocated to some item or class of gross income. The remainder, if any, shall be included in full as net income from sources within the State.

"c. Items of gross income, expenses, losses and deductions, other than those specified in subdivision a, and b, shall be allocated or apportioned to sources within or without the state under rules and regulations prescribed by the commissioner. Where items of gross income are separately allocated to sources within the state, there shall be deducted (for the purpose of computing the net income therefrom) the expenses, losses and other deductions properly apportioned or allocated thereto and a ratable part of other expenses, losses or other deductions which can not definitely be allocated to some item or class of gross income. The remainder, if any, shall be included in full as net income from sources within the state. In the case of gross income derived from sources partly within and partly without the state, the net income may first be computed by deducting the expenses, losses or other deductions apportioned or allocated thereto and a ratable part of any expenses, losses or other deductions which can not definitely be allocated to some item or class of gross income; and the portion of such net income attributable to sources within the state may be determined by processes or formulas of general apportionment prescribed by the commissioner."

Additionally, there were several statutorily authorized regulations promulgated by the State that pertain to the issue at bar, most notably Article 16.9 entitled "Apportionment of Deductions" which stated:

"*Article 16.9—Apportionment of Deductions.* All other deductions, losses, or expenses not required to be directly apportioned under the provisions of Section 2416(b) of the Income Tax Law, but which are unmistakably applicable to business operations carried on within the State of Idaho or without the State of Idaho, as the case may be, shall be so

apportioned. Such deductions shall include losses incurred in special ventures; expenses incurred in earning income included under Article 5, above; losses occasioned by fire, theft, or other cause beyond the control of the corporation; losses arising from the abandonment of property; losses resulting from the sale or exchange of furniture, machinery or equipment used by the corporation in its trade or business; and any other such expenses, losses, or deductions which can be so apportioned. If the corporation's books and accounting procedure do not permit the proper apportionment of such deductions, they shall be applied against income derived from partly within and partly without the State of Idaho."

and Article 16.10 which reads, in part:

"From the net taxable income derived from all sources, both within and without the State of Idaho, as defined in Section 27 of the Act (items [sic] 24, page 1, of the income tax return) there shall be deducted the sum of (1) the net income derived entirely from sources within the State of Idaho, and (2) the net income derived entirely from sources without the State of Idaho. The latter two items shall be determined under the provision of Articles 16.5 to 16.9, inclusive. The net figures thus obtained shall be considered income derived from sources partly within and partly without the State of Idaho."

Union Pacific argues that the language of I.C.A. § 61–2416(c) indicates that a ratable part of the federal income tax deduction should be deducted from allocated income only if the taxpayer cannot tie it to apportionable income. The portion of the statute relied upon by Union Pacific to support its arguments is that there shall be deducted from allocated income "a ratable part of other expenses, losses, or other deductions *which cannot definitely be allocated to some item or class of gross income.*" (Emphasis added.) The State, on the other hand, focuses on the language that "*a ratable part of other expenses, losses, or other deductions*" should be deducted from allocated income. (Emphasis added.)

When interpreting a statute this Court has stated that "[t]he plain, obvious and rational meaning is always preferred to any hidden, narrow or irrational meaning." *State ex rel. Evans v. Click,* 102 Idaho 443, 448, 631 P.2d 614, 619 (1981) (citing *Higginson v. Westergard,* 100 Idaho 687, 691, 604 P.2d 51, 55 (1979); *Nagel v. Hammond,* 90 Idaho 96, 408 P.2d 468 (1965)). An examination of the pertinent statutes convinces us that Union Pacific should have deducted the federal income tax deduction from both allocated and apportioned income. We reach this result because as the trial court stated "federal income tax is an expense which is reasonably and unmistakably related to the earning of income of whatever type and wherever earned" and the more reasonable interpretation is that when the legislature enacted the statute to read that from allocated income there shall be deducted "a ratable part of other expenses, losses or other deductions" this included federal income taxes and not just when they could not be definitely allocated to some other item or class of gross income. We find further support for this interpretation because an examination of the tax form admitted into evidence by the Tax Commission indicates that if Union Pacific had followed the tax form correctly it would have deducted the federal income tax from both allocated and apportioned income. Therefore, we uphold the trial court and affirm its judgment on this issue.

The next issue we need to discuss is the State's appeal from the trial court's decision that under the special circumstances of this case Union Pacific should not have to pay interest on the tax deficiency. The State argues that absent statutory authorization the district court did not have the power to remit interest imposed by statute on a tax deficiency. I.C. § 63–3045(c) states:

"Interest upon any deficiency shall be assessed at the same time as the deficiency, shall be due and payable upon notice and demand from the state tax commission and shall be collected as a part of the tax at the rate of twelve per centum

(12%) per annum from the date prescribed for the payment of the tax."

The State argues that the statute is clear and unequivocal when it states that "*interest ... shall* be assessed" and "*shall* be collected." (Emphasis added.) The trial court held that under the unique circumstances of this case the court would exercise its equitable power and limit the State's recovery to the principal tax deficiency and not allow a recovery for interest from 1942.

 The general rule is that absent statutory authorization, courts have no power to remit interest imposed by statute on a tax deficiency. *American Airlines, Inc. v. City of St. Louis,* 368 S.W.2d 161 (Mo.1963); *see generally* 85 C.J.S. Taxation, § 1031(c) (1954). We agree with the State that I.C. § 63–3045(c) is clear and unequivocal when it states that "interest ... shall be assessed" and "shall be collected." This section is not discretionary, but rather, it is mandatory. Following the language of this section we hold that this Court, as well as the district court, lacks any power to remit the interest that is mandated by the statute. Therefore, as to the interest issue we reverse with directions for the trial court to award interest from 1942.

Affirmed in part and reversed in part with directions.

Costs to appellant, cross-respondent.

No attorney fees on appeal.

BAKES, BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, Justice, concurring in part and dissenting in part.

I concur in the majority opinion, except that portion which imposes interest in the amount of $105,495 on the tax liability of $47,935. As I view the record, there is no question but that Union Pacific filed its 1942 tax return in a timely manner. No proceedings were undertaken by the State to determine or assess a deficiency on that return. For some period of time and until 1977, there were proceedings to resolve the federal income tax question. In 1977, the taxpayer finally prevailed in that federal proceeding. Thereafter, the taxpayer, as required by statute, notified the Idaho State Tax Commission of the final determination of federal taxes. Thereafter, and only upon the taxpayer's claim of refund from the State, did the State Tax Commission determine a deficiency as to the taxpayer's 1942 tax return.

Hence, it is my belief that the taxpayer has been blameless in this matter, at least until the date that the Tax Commission, on March 6, 1978, issued its notice of deficiency determination.

The majority opinion, utilizing a narrow statutory interpretation approach, overturns the decision of the district court that as a matter of equity, interest on the deficiency assessment should not be imposed. That decision of the district judge is well reasoned, is supported by authority, and, in my view, should be affirmed. Where, as here, suit was instituted for a refund of taxes, the action is governed by equitable principles. *Goodwill Industries v. Los Angeles County,* 117 Cal.App.2d 19, 254 P.2d 877 (1953). *See also Burhans v. County of Kern,* 170 Cal.App.2d 218, 338 P.2d 546 (1959). As was stated in a somewhat similar case, *Dravo Contracting Co. v. James,* 114 F.2d 242, 247–248 (4th Cir.1940), *cert. denied,* 312 U.S. 678, 61 S.Ct. 450, 85 L.Ed. 1117 (1941):

"The hearing below was an attempt to make the apportionment; and as heretofore indicated an incorrect basis of apportionment was used. In the meantime no action has been taken by the state officials toward assessing the tax on the correct basis, and the amount of the liability of the taxpayer has not been determined. Until the amount of the tax is fixed, so that the taxpayer may know with certainty what amount he is required to pay, we think it would be inequitable to charge him with interest. Particularly is this true in view of the fact that taxpayer has been furnished no opportunity under the law of paying the tax under protest and suing for the recovery of the illegal portion."

In the instant case, the taxpayer reported income and paid tax for the year 1942. Such return was not challenged until 1978 and until that time the taxpayer had no opportunity to pay any assessed additional tax. Considering the enormous lapse of time and the inaction of the Tax Commission, the strict statutory construction approach of the majority brings about a highly inequitable result.

I would affirm the decision of the district court in its entirety.